Supreme Council of the Royal Arcanum v. Luella M. McKnight, Appellant, and Emma Little, Appellee.

Gen. No. 13,890.

1. FRATERNAL BENEFIT SOCIETY—*who not qualified beneficiaries.* Where nieces and nephews of blood relationship are qualified as beneficiaries, the niece of a deceased wife does not come within the designation and is not a qualified beneficiary.

2. FRATERNAL BENEFIT SOCIETY—*who may question qualifications of beneficiary.* A person claiming adversely to the beneficiary named in the certificate may raise the question as to whether such beneficiary is qualified to take; the action of the society in filing a bill of interpleader and paying the amount of the certificate into court does not affect the right of such contestant to raise such question.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed April 3, 1908. Rehearing denied April 14, 1908.

**Statement by the Court.** The Supreme Council of the Royal Arcanum, a benevolent association organized under the laws of Massachusetts, filed its bill of interpleader in the Circuit Court against Luella M. McKnight, appellant, and Emma Little, appellee, claimants of the proceeds of a benefit certificate issued by the complainant to James Henry Little, one of its members, now deceased, to determine which of the claimants is the beneficiary and entitled to the benefits under the certificate.

The bill avers that in 1895, James Henry Little became a member of Garden City Council, one of the subordinate bodies of the Arcanum, which issued to him a benefit certificate for the sum of three thousand dollars, payable "in the event of his death in good standing, to such beneficiary or beneficiaries as he had designated in said benefit certificate, or might thereafter designate, in accordance with the provisions of the constitutions and laws of said order;" and that said Little

then designated his wife, Olivia S. Little, as such beneficiary. Olivia S. Little died in 1896.

The bill further alleges that one of the laws of said corporation provided that a member might at any time pay a fee of fifty cents, make a written surrender of his benefit certificate, and direct that a new certificate be issued to him, payable to such beneficiary as such member might designate in accordance with the laws of the order. The written surrender and designation for change of beneficiary must then be forwarded under the seal of the subordinate council with the benefit certificate and fee to the Supreme Secretary who should issue a new certificate in accordance with the direction given. The by-laws provided that a "benefit" may be made payable to any one or more persons of any of the following classes only: 1st, member's wife.   *   *   *   8th, member's nieces and nephews (children of brothers and sisters of the whole blood). 9th, member's niece's and nephews, (children of brothers and sisters of the half blood)   *   *   *   All relatives of a member to whom a benefit may be made payable as above provided must be blood relatives."

The bill alleges that after the death of the beneficiary, Olivia S. Little, James Henry Little made a request for a change of beneficiary in accordance with the sections of the by-laws, and named as his beneficiary Luella M. McKnight, appellant, stating in his request for the change of beneficiary that she was related to him as "niece"; and a benefit certificate was accordingly issued to him in which the benefit was made payable to Luella M. McKnight "niece." The certificate so issued was in force at the time Little died, October 17, 1904.

After the death of Olivia S. Little, as the bill shows, James Little married appellee, Emma Little, who survived him; that appellee claims that Luella M. McKnight is not the niece of said James Henry Little, but is the daughter of a sister of his first wife, Olivia S. Little, and therefore is not a legal beneficiary of

said Little; that appellee claims the benefit as widow of the member under and in accordance with a by-law which provided that "if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person mentioned in Class First," namely, the member's wife.

The bill prayed that the claimants might interplead and show to the court to which of them the fund of right belonged, stating that, "Your orator being willing and desirous and hereby agreeing that the said benefit may be paid to such of them to whom the same shall belong, as in the judgment of your honors it shall appear of right to belong;" and for permission to pay the $3,000 into court, "for the benefit of such of the defendants who shall appear to be entitled thereto," and that upon such payment the complainant might be released from all further liability.

Appellee answered the bill setting up substantially the facts averred in the bill, and also the by-laws of the complainant.

Appellant McKnight answered averring that at the time Little applied for a change of beneficiary and named her as such, said Little fully and carefully explained to the officers of said Garden City Council, and agents of the complainant, that she was a daughter of a sister of his deceased wife, Olivia, and therefore, his niece by reason of his intermarriage with said Olivia; that she was then and had been a member of his family and dependent on him for support since 1887, when she was but ten years of age; and that it was then represented to said Little by the officers of said council and agents of complainant that this defendant was eligible as a beneficiary to be named in the benefit certificate of said Little.

Appellant's answer further stated that a short time after the new benefit certificate was issued said Little became financially embarrassed and unable to continue the payment of assessments and dues to complainant, and was then in arrears $14.89; and wrote appellant a

letter in which he stated his financial inability, and that "if you wish to keep this up I am perfectly willing you should do so. It is good and cheap insurance," and signed the letter "Your Uncle, Jim." After the receipt of the letter, it is alleged, appellant called upon the collector of the subordinate council, showed him the letter and told him she would pay up the arrearages and afterwards pay all assessments and dues as they became due, if she could receive the insurance in the event of Little's death. She explained fully her relationship to Little, and that she was his designated beneficiary; and the collector told her that if she made the payments she would receive the benefit. Believing such statement she paid the $14.89 to the official, and afterwards paid all assessments and dues required prior to Little's death aggregating $300.

A decree was entered adjudging that the bill was properly filed and requiring the defendants to interplead; the complainant was ordered to pay the sum of $3,000 into court and after payment of costs of the complainant the remainder of the fund be held to await the further order of court.

On the final hearing of the cause between the interpleaders the court decreed that appellee, Emma Little, was entitled to the fund and ordered it paid to her.

MILLARD R. POWERS, for appellant.

W. S. OPPENHEIM, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The evidence in the record consists of a stipulation of facts, the offer on the part of appellee of certain sections of the statute of Massachusetts relating to fraternal beneficiary organizations, in force May 29, 1888; also certain sections of the constitution of the Supreme Council of the Royal Arcanum and the testimony of appellee as to her marriage with James Henry Little December 20, 1899, and that she lived with him as his wife until his death October 17, 1904.

Appellant testified to the facts set up in her answer, and that Little had no children by his first marriage; that when she was nine years of age she went to live with Mr. and Mrs. Little in Omaha, Nebraska, and lived with them for six years until they moved to Chicago, and continued to live with them until Olivia S. Little's death; that the home was not broken up by Mr. Little until nearly a year after Mrs. Little's death. The letter of Mr. Little to her referred to in her answer was offered in evidence. She swore to the conversation with the collector and the payment by her of the arrearage on the certificate, and the payment by her of all subsequent assessments and dues, and that the amounts so paid by her aggregated about three hundred dollars; that for about one year before the death of her aunt she worked for the Chicago Telephone Company, receiving $10 per week, and that she was married March 30, 1898, but continued to live at Mr. Little's house for months thereafter.

There is no conflict or controversy of fact in the evidence. The question presented is, Which claimant, under the law, is entitled to the fund?

The charter of the Supreme Council of the Royal Arcanum empowers it to prescribe by its by-laws the manner in which its purposes may be carried out, and further provides that benefits may be payable to "the husband, wife, children, relatives of, or persons dependent upon such member; but no contract under this act shall be valid or legal which shall be conditioned upon an agreement or understanding that the beneficiary shall pay the dues and assessments, or either of them, for said member."

The benefit certificate in question contains an express provision that the contract is "upon condition that the said member complies in the future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the Supreme Council to govern said Council and Fund."

Counsel for appellant in his brief says: "We have

never made any claim that appellant should receive this fund on the ground of dependency. We have always based our case upon relationship, and the fact that appellant was a member of Little's family." We may then dismiss from our consideration, without further remarks, the question of dependency, at the time of the death of the insured, under the charter and by-laws of the complainant, and the right of appellant to take the fund by reason of that fact.

The relationship of the beneficiary to the member specified in grades eighth and ninth provided for in section 324 of the by-laws of the complainant, as amended and in force August 1, 1904, and at the time of Little's death, is that of the member's nieces and nephews, "children of brothers and sisters of the whole blood" or "of the half blood."

It appears to be clear from the terms used that this section of the by-laws requires the beneficiary to sustain a blood relationship when nieces or nephews are named, and therefore a niece of a deceased wife does not sustain the relation to the member required by the by-laws, and does not belong to either of the classes of persons for whom only the benefit fund in question was accumulated. Murphy v. Nowak, 223 Ill. 301; Baldwin v. Begley, 185 *id.* 180; Alexander v. Parker, 144 *id.* 355.

But it is urged on behalf of appellant that the charter and laws of the society should receive a liberal construction; and that the right to the fund must be determined by the affirmative positions of the respective claimants. These general contentions are supported by authority and within proper limitations as to their application to any given case may be regarded as an expression of the law. But we cannot assent to the further contention made in behalf of appellant that when the designation of a beneficiary is not prohibited by statute or public policy, and the society waives a defense, no one else can avail of such a position to defeat an opposing claim; or as specifically applied to

this case, in argument, "any defense the Arcanum might have made was personal to it, and was waived by filing its bill and paying the money into court," and therefore appellant being the beneficiary designated in the certificate of membership, appellee cannot raise the question that she does not belong to either of the classes of persons for whom the benefit fund in question was accumulated. Stating this proposition in another way, it is that when a bill of interpleader is filed by a benevolent association against the person named as the beneficiary in the certificate, and others who claim as relatives of the deceased member, the person named in the certificate is absolutely entitled to the fund, upon the ground that the association thereby waived the question of the inability of the beneficiary named to take under its charter and by-laws. If this is sound in law, it necessarily follows that the filing of the bill in every case gives the fund to the person named as beneficiary, and excludes all others who would be entitled to it under the contract and laws of the association if the bill had not been filed. As applied to the facts of this case, the proposition is not sound. We do not think the filing of the bill of interpleader in this case changed the rights of the parties as fixed by the contract at the death of Little.

In the early days of mutual benefit insurance there were frequently no provisions in the benefit certificate or the by-laws for the payment of the fund to anyone other than the person mentioned in the benefit certificate. If for any reason this designation failed, the association did not pay the fund to any person. Under such a state of affairs some courts have held where a bill of interpleader has been filed by a benefit association stating that claims were made by different persons under the certificate, and it was ordered to pay the money into court, it could not in that proceeding question the right of the defendants to receive the money. Experience, however, has led benevolent associations to provide in their by-laws for such contin-

gencies, and the Royal Arcanum, as the record shows, has provided by its by-laws that in the event of the failure of designation for illegality or otherwise, the benefit shall be paid to the person mentioned in class first in section 324, the member's wife. Appellee, therefore, if this suit had not been instituted, would be entitled to take the fund in question, under the by-laws of the association. Under the contract here presented, we think the argument so earnestly presented by counsel for appellant, that the filing of this bill by the Royal Arcanum has deprived appellee of the right to insist upon the provisions of the contract and claim the fund under its provisions, and in so doing question the right of appellant thereto, must be regarded as wholly fallacious and inapplicable to the case. This is not and never has been the law of this state, as we are advised. The reasoning and conclusion in Parke v. Welch, 33 Ill. App. 188, appeals to us with convincing force. The affirmation of the judgment in that case in Palmer v. Welch, 132 Ill. 141, established the law in this state upon the question presented.

On the authorities of these cases and Baldwin v. Begley, *supra,* and Murphy v. Nowak, *supra,* the decree of the Circuit Court must be affirmed.

*Affirmed.*